UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEANTREY MORRIS | CIVIL ACTION |
| VERSUS | NO. 14-1741 |
| JOSEPH MEKDESSIE, ET AL. | SECTION "N" (4) |

**ORDER AND REASONS**

Presently before the Court is the Defendants' "Motion for Summary Judgment (Qualified Immunity) on Behalf of Joseph Mekdessie, Brandon Leblanc, Daniel Swears, the City of Gretna, and Arthur S. Lawson" (Rec. Doc. 42); Plaintiff Seantrey Morris' "Memorandum in Opposition" (Rec. Doc. 49); Defendants' "Reply Memorandum in Support of Motion for Summary Judgment" (Rec. Doc. 55); Defendants' "Supplemental Memorandum in Support of Motion for Summary Judgment" (Rec. Doc. 70); and Plaintiff's "Supplemental Memorandum in Opposition to the Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment" (Rec. Doc. 75). The Court rules on the motion as stated herein.

**I. Background**

On the evening of July 31, 2013, Plaintiff Seantrey Morris ("Morris") was the subject of a traffic stop by Officer Joseph Mekdessie ("Mekdessie") of the City of Gretna (Louisiana) Police Department. Prior to the traffic stop, Mekdessie, in a marked police car, had driven up behind Morris, who was driving in a 2006 Pontiac GTO, at a red light. At the traffic light, Mekdessie observed Morris' brake tag, or Motor Vehicle Inspection ("MVI") sticker, to be expired. Then, upon the light turning green, Mekdessie watched as Morris accelerated rapidly and reached a speed of 45 miles-per-hour in a 35 miles-per-hour zone. Thereafter, Mekdessie pulled Morris over. Morris

then provided the officer with proof of insurance that had expired and registration for a vehicle other than the GTO that he was driving.

As the traffic stop unfolded, Morris was able to produce proof of valid insurance on his mobile device and locate proper vehicle registration. After Morris had exited his vehicle to provide Officer Mekdessie with the vehicle registration, Mekdessie ordered Morris to wait behind the GTO as the officer completed paperwork in his squad car. Morris complied as instructed, until Mekdessie returned with traffic tickets for speeding and operating a vehicle with an expired brake tag.

The parties debate much of what ensued. According to portions of Morris' deposition testimony, as Officer Mekdessie presented the ticket, Morris asked the officer why he was being ticketed (Rec. Doc. 49-1 at p. 45). Mekdessie refused to explain, only instructing Morris that the ticket was not an admission of guilt and that he needed to sign it. (*Id.*). When Morris repeated the question, Mekdessie informed him that he would be arrested Morris if he did not sign. (*Id.* at p. 46). Disregarding this warning, Morris persisted in his questioning to no avail. (*Id.*). At some point, Mekdessie told Morris to put his hands behind his back because he was being arrested; Morris did not comply. (*Id.*).

A physical confrontation broke out, with Mekdessie taking Morris to the ground in a headlock. (*Id.* at p. 48). Thereafter, Morris remembers little, except that he was tased an unknown number of times, handcuffed, and placed in the back of a police car, but not necessarily in that order. (*Id.* at 74, 113). Morris also does not remember whether he was on the ground or on his feet when tased. (*Id.* at 73-75). After the arrest, Officer Daniel Swears ("Swears") transported Morris to the Jefferson Parish Correctional Center ("JPCC"). (Rec. Doc. 49 at p. 11). Upon a nurse's evaluation at the JPCC, Officer Swears then transported Morris to University Hospital, where he underwent

surgery for a broken jaw. (Rec. Doc. 49 at p. 12).

Morris was charged with violating three City of Gretna ordinances: (1) 90-1:63A.1 [Speeding 1-10 MPH over]; (2) 90-1:1304 [No Brake Tag]; (3) 16-65 [Resisting a Police Officer]; and (4) 16-65.5 [Battery on a Police Officer]. (Rec. Doc. 42-2 at p. 39). Subsequently, Morris voluntarily completed a pretrial diversion program, and the charges were dismissed. He has since brought the instant lawsuit against the defendants for claims of unlawful arrest, false imprisonment, excessive force, battery, municipal liability, and improper training and supervision. (Rec. Doc. 1).

**II. Law and Analysis**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(a), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to

3

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001). An issue is considered genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000).

### A. *Heck v. Humphrey's* Favorable Termination Rule

The Supreme Court of the United States, in *Heck v. Humphrey*, held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . . A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. 477, 486-87, 114 S.Ct. 2364 (1994); *see also DeLeon v. City of Corpus Christi*, 488 F.3d 649, 652 (5th Cir. 2007) ("[A] civil tort action, including an action under section 1983, is not an appropriate vehicle for challenging the validity of outstanding criminal judgments.") (citing *Heck,* 512 U.S. at 486). Pursuant to *Heck*, when addressing tort claims brought against an arresting officer, the court "must first consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. If so, the claim is barred unless the conviction has been

4

reversed or declared invalid." *Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 2000) (citing *Heck,* 512 U.S. at 487) (internal quotation omitted).

The Fifth Circuit considers voluntary participation in a pretrial diversion program to be a "conviction" for purposes of *Heck*. *See Elphage v. Gautreaux*, 969 F.Supp.2d 493, 506 (M.D.La. Sept. 3, 2013) ("The Fifth Circuit has joined the Third and Second Circuits in treating pretrial intervention programs as convictions under *Heck*."). Moreover, the dismissal of charges after the completion of a pretrial program does not constitute a termination of the criminal proceedings in favor of the plaintiff. *See Evans v. Ball*, 168 F.3d 856, 859 (5th Cir. 1999) ("The rule in this circuit . . . is that proceedings terminate in favor of the accused only when they affirmatively indicate that he is not guilty."), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003). In *Elphage*, the plaintiff was charged with resisting an officer, but entered and completed a pretrial intervention program that resulted in the dismissal of the charges. 969 F.Supp.2d at 507. She then brought a § 1983 claim for wrongful arrest. *Id.* Finding her participation and completion of the pretrial program to qualify under *Heck* as a conviction, the court proceeded to bar the plaintiff's § 1983 claim. *Id.* To allow the plaintiff to assert her civil claim, reasoned the court, "would undermine her participation in, and completion of, the pretrial intervention program" because the plaintiff's "voluntary participation in [the program] with regard to the charge of resisting arrest necessarily implies that [the deputy] conducted a lawful arrest, and therefore, had probable cause for arresting her." *Id.* at 507-08. Furthermore, the *Elphage* court noted that barring the plaintiff's contradictory § 1983 claim served sound public policy – that is, it allows prosecutors to make use of pretrial intervention programs without having to fear criminal defendants returning to the courthouse steps as a civil plaintiffs eager to sue. *See id.* at 508 (citing *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir.

5

1994).

Morris argues that this Court should not follow the lead of other district courts in this Circuit because the City of Gretna's pretrial diversion program is distinguishable from those they considered. (Rec. Doc. 49 at p. 23). In particular, Morris takes issue with the short duration of Gretna's pretrial program and the lack of supervision it entails. However, Morris has not provided any case law to explain why these features make Gretna's pretrial program, and not others, insufficient for *Heck* purposes. The Court is unpersuaded. While the burden imposed on participants varies between programs of the many municipalities, Gretna's program is similar to others that have qualified under *Heck* in that each has certain requirements that must be fulfilled before charges are dismissed. In Morris' case, the charges were dismissed only once he fulfilled those requirements, which included the payment of a $550 fee. Mandating a lengthy probationary period, or extensive court supervision, would do little to change the legal implications of voluntary participation in a pretrial diversion program, which courts in this circuit have unanimously found to be equivalent to a conviction under *Heck*. *See e.g., Elphage v. Gautreaux*, 969 F.Supp.2d 493, 506 (M.D.La. Sept. 3, 2013) and *Bates v. McKenna*, 2012 WL 3309381 at *5 (W.D.La. Aug.13, 2012). Accordingly, the Court finds that Morris' participation in Gretna's diversion program constitutes a conviction under *Heck.* Because the conviction has not been reversed on direct appeal, expunged, declared invalid or otherwise called into question in a habeas proceeding, Morris' § 1983 claims may proceed only if the Court determines that a judgment in his favor will not necessarily call into question the validity of his convictions. *See DeLeon*, 488 F.3d at 652.

**1. False Arrest, Unlawful Seizure, False Imprisonment and Malicious Prosecution**

Applying the above test, the Court finds that Morris' claims of false arrest, unlawful seizure,

false imprisonment, and malicious prosecution are barred under *Heck*. At their core, these claims challenge the arrest, detention, and charging of Morris. To allow these claims to proceed would necessarily imply the invalidity of the convictions on the charges of speeding, no brake tag, resisting an officer, and battery of a police officer. Accordingly, these claims, brought against Defendants Mekdessie, LeBlanc, and Swears, are hereby **dismissed**.

### 2. Excessive Force and Battery under *Heck*

Morris' claims for excessive force and battery, asserted against Defendants Mekdessie, LeBlanc, and Swears, in their personal capacities, are not automatically barred under *Heck*, because a § 1983 claim of excessive force does not necessarily call into question the validity of his "resisting arrest" conviction. *See e.g. Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008) ("[A] claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance."). In this case, while Morris' recollection of the circumstances of the arrest is questionable, grainy video footage taken from the taser itself shows that Morris was possibly handcuffed and submissive at the time of tasing, which may be considered as possible corroboration of the claim that the officers exerted excessive force after the arrest. Therefore, the Court finds that the excessive force claim is not barred *per se* under *Heck.* The Court finds the same for Morris' battery claim, which the defendants do not address.

### B. Qualified Immunity, Excessive Force, and Battery

Officers Mekdessie, LeBlanc, and Swears have also asserted a qualified immunity defense to Morris' excessive force claim. The Fourth Amendment provides a clearly established right to be free from excessive force during a seizure. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir.2012). "To overcome the officers' claim of qualified immunity on his claim of excessive force,

[the plaintiff] must show '(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Id.* at 628 (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir.2009)). To the extent possible, the actions of each officer are to be evaluated separately to determine whether the use of force was clearly excessive and clearly unreasonable. *Poole*, 691 F.3d at 628.

In this case, it is undisputed that Morris suffered, at a minimum, a fractured jaw in the altercation with the officers. The officers have not argued that Morris sustained the injury at some time other than during the encounter, and there is some evidence to suggest that it occurred as a result of the tasing. Furthermore relying again, on the video footage from the taser, the Court finds that the evidence creates a genuine factual dispute as to whether the tasing of Morris was unlawful. Ultimately, the court concludes that the reasonableness of the applied force is a question ripe for the jury.

The Court now turns its attention to the question which of the officers are responsible for force that could be deemed excessive. As the undisputed operator of the taser, Officer LeBlanc is clearly one such officer. Officer Swears, on the other hand, is not, as there is not so much as an allegation that he participated in the physical confrontation, and Morris has provided no legal theory for finding him otherwise liable. With regard to Officer Mekdessie, however, the answer requires a more complex analysis. As discussed *supra*, under *Heck*, it is beyond dispute that Morris resisted arrest and battered Officer Mekdessie. Officer Mekdessie was, therefore, justified in exerting force, within reason, upon Morris to effectuate the arrest. The taser video, which forms the crux of Morris' excessive force claim, does not implicate Mekdessie or his actions. There is no other evidence that Officer Mekdessie continued to exert force, excessive or not, after Morris had been restrained or

otherwise submitted to authority.[1] As such, there exists no evidentiary basis for finding the force exhibited by Mekdessie to have been excessive. Accordingly, the claim may proceed only against Officer LeBlanc.

As a corollary to his constitutional claim of excessive force, Morris has also brought claims against the officers for battery under state law. "Excessive force transforms ordinarily protected use of force into an actionable battery" under Louisiana law. *Penn v. St. Tammany Parish Sheriff's Office*, 02-0893 (La.App. 1 Cir. 4/2/03) 843 So.2d 1157, 1161. Therefore, the Court finds that Morris' state law battery claim also survives, but, again, only as against Officer LeBlanc.

**C. Municipal Liability**

Morris also asserts a § 1983 claim for municipal liability against the City of Gretna and claims for lack of supervision and training against the Gretna Police Department and Arthur Larson, in his official capacity as chief of police for the City of Gretna. Municipal liability under section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978)). Morris' claim is premised on an unwritten policy allegedly followed by the Gretna Police Department, which established ticket and arrest quotas for its patrol officers. As evidence that the policy's existed, Morris relies on the deposition of Officer Swears, wherein he

---

[1] As the explanation for his fractured jaw, Morris argues that he was restrained in handcuffs and standing when tased, which caused him to hit the ground with sufficient force to cause the injury. (Rec. Doc. 49 at p. 11). This version of events supports the conclusion that the force applied by Officer Mekdessie was not excessive.

testifies to being ordered by a supervisor to fulfill the quota requirements. (Rec. Doc. 49-3 at p. 2).[2] Even assuming the existence of this policy, Morris has not shown how his excessive force claim and the quota policy are related, such that the policy was the moving force behind Officer LeBlanc's use of excessive force. Moreover, Morris fails to explain how the purported link between the two withstands the fact that he was speeding when pulled over and refused to comply with the arresting officer's commands. Therefore, Morris' municipal liability claim against the City of Gretna is dismissed.

### D. Lack of Supervision and Training

Morris' final claim is for lack of supervision and training against the Gretna Police Department and Arthur Larson, in his official capacity as Chief of Police for the City of Gretna. Morris cites no case law in support of this claim, which is also based on the alleged existence of the quota policy, discussed above. Based on the quota policy, Morris merely speculates that there could be other unwritten policies followed by the police department that led to him being tased in an allegedly unlawful fashion. Beyond this impuissant inference drawn by Morris, he offers no evidence that Chief Larson or the Gretna Police Department provided inadequate training or supervision. Therefore, on the showing made by Morris, the claim of lack of supervision and training is dismissed, for want of evidentiary support.

---

[2] It appears the parties have not provided the Court with a cited portion of the deposition transcript wherein Officer Swears discusses the quota policy. Because the Court does not have Officer Swear's entire testimony on the topic, it cannot verify the accuracy of the defendants' assertion that the policy was not in effect at the time of the arrest, if it existed at all. (*See* Rec. Doc. 49-3, at p. 8-24).

**III. Conclusion**

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Rec. Doc. 42) is **DENIED IN PART** and **GRANTED IN PART**.

The Motion is **DENIED** to the extent that the claims asserted against Defendant Brandon LeBlanc for excessive force and battery have survived summary judgment.

The Motion is **GRANTED** to the extent that all other claims are **DISMISSED with prejudice**.

New Orleans, Louisiana, this 25th day of February, 2016.

_____
**KURT D. ENGELHARDT**
**United States District Judge**